UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SALVATORE BASILE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10096-IT |
| | * | |
| STEVEN TOMPKINS, Suffolk County | * | |
| Sheriff, in his official capacity, | * | |
| | * | |
| Defendant. | | |

MEMORANDUM & ORDER

June 10, 2021

TALWANI, D.J.

Plaintiff Salvatore Basile, a former inmate at the Suffolk County House of Correction, brought this action against the Suffolk County Sheriff, Steven Tompkins, alleging that he was denied medication-assisted treatment ("MAT") to treat his opioid use disorder. Pending before the court is Tompkins' Motion to Dismiss and/or for Summary Judgment [#49]. For the following reasons, the motion is treated as one for summary judgment and is GRANTED.

I.      **Background**

A.      *The Underlying Dispute*

The following facts are alleged in Basile's Amended Complaint [#44] and are not in dispute for purposes of the pending motion. Basile has been suffering from opioid use disorder for at least twenty years. Am. Compl. ¶ 70 [#44]. On January 18, 2019, he was held at the Suffolk County Jail as a pretrial detainee. Id. at ¶¶ 16-17, 72. He reported significant prior opioid use, including the use of substances immediately before his incarceration, and acute withdrawal symptoms. Id. at ¶ 72. The next day he was transferred to the Suffolk County House of

Correction. Id. at ¶ 73. Basile was not given any treatment for his opioid use disorder or withdrawal symptoms, nor was he informed that such treatment was available. Id. at ¶¶ 73, 75.

In August 2019, after learning that the Suffolk County Sheriff's Department ("Sheriff's Department") offered MAT, Basile requested to be placed on buprenorphine. Id. at ¶¶ 6, 76. However, at that time, the Sheriff's Department did not provide MAT to pretrial detainees, and Basile's request was denied. Id. at ¶¶ 7, 67, 76.

On January 13, 2020, Basile filed a pro se Complaint [#1], followed by a Motion for Preliminary Injunction [#18] on February 26, 2020, requesting a court order that he be administered buprenorphine while in county custody. Id. at ¶ 78. In March 2020, he was medically reevaluated by Sheriff's Department medical personnel, diagnosed with opioid use disorder, and enrolled in the MAT program. Id. at ¶¶ 78-79. Basile continued to receive MAT until July 2020, when he was transferred to Massachusetts Department of Correction custody. Id. at ¶¶ 79, 82.

Basile, now represented by pro bono counsel, withdrew his Motion for Preliminary Injunction [#18] on April 13, 2020, and filed the Amended Complaint [#44] on January 18, 2021, alleging that in denying him MAT, Tompkins violated his statutory rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and his constitutional rights under the Eighth and Fourteenth Amendments.

B.    *Basile's Grievances*

Basile acknowledges that the Sheriff's Department has an established grievance process for general matters of administration and safety, but he alleges that the Sheriff's Department has no process for resolving grievances related to medical matters. Id. at ¶ 84. He asserts that such grievances are transferred to NaphCare, which, he claims, does not have a grievance policy

concerning decisions related to MAT. Id. at ¶¶ 68, 84. Basile alleges that he attempted to submit grievances concerning the denial of his requests for MAT through the administrative grievance process, that his grievances were never transferred to NaphCare, and that they were, instead, discarded. Id. at ¶ 88.

On February 5, 2021, in support of his Motion to Dismiss and/or for Summary Judgment [#49], Tompkins filed an affidavit from the Sheriff's Department's Institutional Grievance Coordinator. Crosby Aff. 1-3 [#50-1]. The affidavit asserts that institutional grievance procedures were available to Basile and that he filed ten grievances and one grievance appeal while incarcerated. Id. Tompkins also attached the inmate grievance policy that was in effect during Basile's custody and copies of Basile's grievances and grievance appeal. Grievance Policy 4-7 [#50-1]; Grievances 8-22 [#50-1].

The grievances demonstrate that, on February 25, 2019, Basile filed a grievance related to his need for glasses. Grievances 9 [#50-1]. The grievance was transferred to NaphCare on March 4, 2019, and NaphCare responded the next day. Id. Several other grievances also relate to medical issues, including MAT. On July 16, 2019, Basile submitted a grievance asking to be placed on pain medication. Id. at 13. The grievance was returned, and Basile was told to put in a "medical sick call slip." Id. He appealed on July 30, 2019, and the appeal was "resolved" because Basile had an appointment to see a medical provider. Id. at 14. Basile submitted another grievance on August 22, 2019, which states that he had yet to see a medical provider and wanted to be placed on pain medication and buprenorphine. Id. at 16. This grievance was transferred to NaphCare on August 26, 2019, and NaphCare responded on August 31, 2019, that Basile would be referred to the MAT program, evaluated within ninety days of his release, and eligible to start

MAT thirty days prior to release. Id. at 17. The response also asked Basile to complete an attached referral form. Id.

Basile submitted another grievance on August 28, 2021, stating that he was "due to get out on bail very soon" and wanted to be placed on buprenorphine. Id. at 18. This grievance was returned two days later asking him to fill out the "participation request form." Id. On September 1, 2019, Basile filed another grievance asking to be placed on buprenorphine, and it was returned as a "duplicate grievance." Id. at 19. Basile filed a grievance on September 9, 2019, asking to have a physical therapy appointment rescheduled. Id. at 20. The request was forwarded to NaphCare, which responded on September 16, 2019, that his appointment had been rescheduled. Id. at 21. In the last grievance in evidence, filed on December 4, 2019, Basile again requests treatment with buprenorphine. Id. at 22. The grievance was returned with the note that "per MAT program Courtney," Basile was "not appropriate [for MAT] right now due to [his] open case." Id. The submitted records include no appeals of the denials of his grievances related to MAT.

In his opposition to Tompkins' motion, Basile submitted an affidavit in which he asserts that he has "no specific recollection [of] receiving a formal grievance policy" when he was detained. Basile Aff. ¶ 5 [#53-1]. He further states that he informed medical personnel that he suffered from opioid use disorder but was not offered any treatment. Id. at ¶ 6. He learned that MAT was available at the Suffolk County House of Correction in August 2019 but was told that he did not qualify. Id. at ¶ 7. He states that he submitted several grievances concerning the MAT program and that, having reviewed the evidence submitted by Tompkins, he believes that those records are incomplete. Id. at ¶ 8. He claims that he attempted to appeal from some, if not all, of the grievances related to his requests to be placed in the MAT program and that these grievances

were discarded. Id. at ¶ 9. He states that three months after initiating this action, he was enrolled in the MAT program but received no explanation for this change. Id. at ¶ 13.

At a hearing on the Motion to Dismiss and/or for Summary Judgment [#49], the court granted leave for Basile to submit a supplemental affidavit containing additional details regarding any grievance appeals he "attempted" to submit. See id. at ¶ 9; Elec. Clerk's Notes [#62]. Basile opted not to submit a supplemental affidavit and to rest on his original filings. Pl.'s Status Report [#63].

## II.    Standard of Review

Under the Federal Rules of Civil Procedure, litigants may attempt to terminate civil actions prior to trial in several ways. The earliest option is a motion to dismiss under Rule 12(b)(6), which "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). In evaluating a motion to dismiss, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "[A] judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice,'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original), but may not consider other materials beyond the pleadings.

Litigants may also move for summary judgment pursuant to Rule 56. Generally, such a motion is brought after the parties have completed discovery. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, unless a local rule or court order provides otherwise, a movant

may file a summary judgment motion before discovery is complete or before it has even commenced. See Fed. R. Civ. P. 56(a) ("a party may file a motion for summary judgment at any time until 30 days after the close of all discovery"). Under Rule 56, the moving party must meet a higher standard than plausibility: the court will grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The court also has discretion to convert a motion to dismiss into one for summary judgment if the parties present evidence that cannot be considered on a motion to dismiss. Fed. R. Civ. P. 12(d). Before doing so, the court must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Id. The court need not, however, "give express notice if the surrounding circumstances effectively place the parties on notice that the court has the option of treating the motion as a motion for summary judgment and the parties have been given reasonable" notice. C.B. Trucking v. Waste Mgmt., 137 F.3d 41, 44 (1st Cir. 1998).

On summary judgment, the moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex, 477 U.S. at 323. This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

6

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

## III.    Discussion

Tompkins moves to dismiss the Amended Complaint [#44] or for summary judgment on the ground that Basile failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. Def.'s Mem. [#50]. In relevant part, the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). The purpose of the requirement is "to reduce the quantity and improve the quality of prisoner suits" and to give prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002). Tompkins argues that Basile did not file any grievance appeals regarding the denial of MAT and thus failed to comply with the PLRA.

      A.    *Motion to Dismiss*

Basile argues that exhaustion is not properly considered on a motion to dismiss. Pl.'s Opp. 9-12 [#53]. Basile is correct that failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must plead and prove. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"); see also Cruz Berrios, 630 F.3d at 11. So, on a motion to dismiss, a plaintiff's alleged failure to plead exhaustion of administrative remedies cannot be grounds for dismissal unless the properly considered facts alleged "suffice to establish" this failure to exhaust "with certitude." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004); see also Jones, 549 U.S. at 212 (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3rd Cir. 2001)) ("a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face"). Here, rather than allege facts sufficient to establish a failure to exhaust, Basile alleged contrary facts, namely that the Sheriff's Department has no process for resolving grievances related to medical matters,

that he nonetheless attempted to submit grievances, and that the grievances were discarded. With these allegations, Tompkins' motion to dismiss fails.

B.    *Motion for Summary Judgment*

In the alternative, Tompkins moved for summary judgment, and Basile requested and was granted additional time to respond. See Letter [#51]; Electronic Order [#52]. Accordingly, the court converts this motion to one for summary judgment, as Basile had sufficient notice of this possibility and took the opportunity to submit his own evidence.

Basile argues that exhaustion is not applicable in this case because no remedy was "available." Pl.'s Opp. 12-15 [#53]. "[T]here is no 'futility exception' to the PLRA exhaustion requirement." Medina–Claudio v. Rodriguez–Mateo, 292 F.3d 31, 35 (1st Cir. 2002). That means that even if a correctional facility's grievance procedures do not provide for the type of relief desired, an inmate must still complete any administrative process capable of addressing the grievance and providing some form of relief. See Booth v. Churner, 532 U.S. 731, 739 (2001). The Supreme Court has, however, recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross v. Blake, 136 S. Ct. 1850, 1853 (2016). "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736, 738). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Third, an otherwise available grievance process is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860. Basile argues that because the Sheriff's Department had no medical

grievance procedure, no remedy was available to him. Pl.'s Opp. 16-19 [#53]. He also claims that his attempts to use the grievance process were thwarted where his grievances were discarded or not recorded. Id. at 22.

To support his argument that no administrative procedure existed, Basile relies on 103 Code Mass. Regs. 491.111. Id. at 16. Under section 491.111, medical decisions are not "grievable" because "the medical contractor is required to maintain its own grievance procedure." 103 Code Mass. Regs. 491.111. However, section 491.111 applies to "employees and inmates at all *state* correctional institutions." Id. at 491.03 (emphasis added). Suffolk County House of Correction is a *county* correctional facility, and its grievance procedures are accordingly governed by 103 Code Mass. Regs. 934.02. See id. at 900.08 (applicability of sections 900.00 through 979.00 "to all county correctional facilities and employees"), 902.01 (definition of "county correctional facility"). Section 934.02 does not contain the same requirement that the medical contractor maintain separate grievance procedures. Id. at 934.02. Rather, it requires that county facilities provide a formal grievance procedure; that grievances be investigated and resolved within fifteen working days; that a written explanation be provided regarding the denial or approval of the grievance; that inmates be informed of their right to appeal; and that appeals be resolved within thirty working days with an explanation regarding the denial or approval. Id.

The Sheriff Department's inmate grievance policy requires inmates to submit all grievances using Form 491-1. Grievance Policy 5 [#50-1]. Under the policy, grievances that involve issues concerning health care are forwarded by the facility's Institutional Grievance Coordinator to the "appropriate supervisor," who conducts an inquiry and prepares a written response within ten working days. Id. at 6. The Institutional Grievance Coordinator then provides

the findings to the inmate and responds to the grievance. Id. The inmate may appeal the Institutional Grievance Coordinator's decision within ten working days. Id.

Based on the record, Basile's allegation that there was no grievance procedure available for medical concerns is unsupported. This is particularly apparent where Tompkins has submitted evidence that Basile filed seven grievances related to medical issues, as well as one appeal. The uncontroverted evidence establishes that a grievance process existed to deal with medical grievances and that Basile was aware of that process, including his right to appeal.

Basile argues that even if such a process existed, it was not "available" to him because Suffolk County House of Correction staff "thwarted" his attempts to use it "by discarding his grievances or making no record of them." Pl.'s Opp. 1, 22 [#53]. As support, he submits his affidavit, in which he states that he "believe[s] these records [of his grievances] are incomplete and [he] submitted further requests concerning the MAT program." Basile Aff. ¶ 8 [#53-1]. He further asserts that the Sheriff's Department did not process some of the grievances related to MAT, that he understood that the grievances were "discarded," and that he "believes[s] this to be a practice of the [Sheriff's Department]." Id. at ¶ 9.

Basile's view that he was unable to obtain any relief by filing grievances is supported by the record. Indeed, Basile filed multiple grievances concerning Suboxone, and each was denied or rejected. The substantive responses to his grievances stated that he would be evaluated "within 90 days of [his] scheduled release" and would "be eligible to start medications 30 days prior to release," and that "per MAT program Courtney," Basile was "not appropriate [for MAT] right now due to [his] open case." Grievances 17, 22 [#50-1]. Basile was seeking MAT for the period of his detention, not merely in anticipation of his release, and these responses are consistent with

his understanding that MAT would not be made available to him until he was scheduled for release, regardless of how many grievances he filed.

But the Sheriff Department's affirmative defense nonetheless stands where Basile failed to use the appeals process. Basile states that "[t]o the best of [his] recollection," he "attempted to submit further appeals from some, if not all of the grievances related to MAT." Basile Aff. ¶ 9 [#53-1]. On summary judgment, this unsupported conjecture is insufficient to rebut Tompkins' evidence that Basile did not appeal the grievances related to MAT. See Town of Westport v. Monsanto Co., 877 F.3d 58, 66 (1st Cir. 2017) ("While it is well-settled that a judge must not engage in making credibility determinations or weighing the evidence at the summary judgment stage, it is equally clear that judges cannot allow conjecture to substitute for the evidence necessary to survive summary judgment. A nonmovant . . . must provide definite, competent evidence") (internal quotation marks, alterations, and citations omitted).

Because Basile failed to exhaust the available administrative remedies, summary judgment in favor of Tompkins is required as to Basile's claims asserted "under section 1983 . . . or any other Federal law." 42 U.S.C. § 1997e(a).

## IV.    Conclusion

For the foregoing reasons, on Tompkins' Motion to Dismiss and/or for Summary Judgment [#49], the court grants Tompkins summary judgment.

IT IS SO ORDERED.

June 10, 2021                                      /s/ Indira Talwani
                                                   United States District Judge